Don't forget to return those stick-on arrows. Good morning, Your Honors. My name is Barry Allen. I'm the attorney for the appellant, Marlon Rice. At the outset, I want to put Mr. Rice's due process claims in context. Lower your voice a little. I apologize, Your Honor. The VA disability claims process has been described at various times as non-adversarial, paternalistic, uniquely proclaimant, and benevolent. Mr. Rice was declared incompetent by the VA from March of 1984 to July of 2010. This court recognized in French v. OPM that a candid assessment of the position of an incompetent in our society is that he is disadvantaged. This court in Edwards v. Shinseki determined that in some cases, a mentally disabled applicant, known to be so disabled by VA, may receive additional extraordinary protections because of that incompetency. We have no question in this case that Mr. Rice was incompetent and that it was known to the VA because the VA declared his incompetency in 1984 and was aware of that incompetency all the way until it cleared his competency in 2010. The Board of Veterans' Appeals made at least 18, and probably significantly more, negative credibility determinations about Mr. Rice during his 26-year period of incompetency. The Board never mentioned his incompetency in their decision. And the Court of Veterans' Appeals simply indicated in a dismissive comment essentially that the Board, Mr. Rice was arguing that the Board made improper credibility findings and the Court said, we don't agree. So what do, I mean, you know, I'm sure you're well aware of our limited standard of review. And it strikes me, and you can push back if you wish, that this is really an assessment or an evaluation. The Board got it wrong. They put too much weight on this and not enough weight on that. I mean, as you well know, we don't have the jurisdiction to review that. So is your argument somehow that because your client, there were questions about his competency, that that gives us the jurisdiction to review and re-evaluate the Board's findings, factual findings? That's correct, Your Honor. And what are we supposed to do with that? So we're supposed to re-evaluate all the factual findings with the assumption that he was incompetent, and what do we then do? Do we exclude all of his testimony? What do we do with the facts? I mean, one, how can we do that with the facts? And two, what would you have us do, even if we could? Your Honor, it's our contention that if someone is determined to be incompetent by the VA, for the VA to take affirmative actions to question that person's credibility is a due process violation. But the evidence here, I mean, the evidence here was based on the medical assessments at various periods of time. I don't see, I mean, you want to point us to the CAVC decision or the Board decision where a substantial aspect of this rested on credibility determination of your client? I'll give you at least one. I'll give you two. On page, this is page 103 of the appendix, the record also reflects that the veteran has had difficulties with his memory. Hold on one second. I apologize. This is the Board opinion, 103, you say? Yes, ma'am. Okay. The Board also reflects, I'm sorry, the record also reflects that the veteran has had difficulties with his memory, which weighs against the finding that his recent assertions made pursuant to the current claim should be given value over the various more contemporaneous in-service and post-service histories. Okay. And our contention is that when they start picking up the references to the post-service histories, they're picking up that entire period of time when he was incompetent. The Board went on to say, not only may the veteran's memory be less than reliable, including with the passage of time. No, but I guess maybe I misspoke. I was talking about what in the record, the evaluation of the evidence that led the Board to its conclusion, where is that showing that they relied on his testimony? It wasn't his testimony at the Board. The issue was that they relied on statements that he either made or didn't make, or things that he did or didn't do during the period of the incompetency. I'm talking about his testimony at the Board. The question is that they had a negative view of his credibility based on all of the determinations that they made against him during that 26-year period of incompetency. Well, when they say first came up with the story, that's after the incompetency. Is that correct? There's some indication that they think that he may have come up with it starting in the cinguinal hernia, and that is during the period of incompetency. We would question that whole reference because the position that we have asserted is if you're going to use everything that he said or didn't say or did or didn't do during his period of incompetency, you've denied him due process. Now, Your Honor, to go back to your specific point. Because I'm looking at the pages of the Board's opinion, and there's a lot of reliance, it has to do with medical history here, right? I mean, not his statements about the evaluations, service treatment records, right? There is a reliance on bits and pieces of the medical record. There is not a reference to that part of the medical record that is favorable to Mr. Rice. They diminish and don't discuss a lot of that. But to get to your specific point, Your Honor, if you have someone who is incompetent, and we have said that that person is someone who is disadvantaged in the system, and we have to give that person extraordinary special protections, how do we go about doing that? You could make a bright-line test and say that any efforts to challenge the credibility of an incompetent who is known to be such by the VA would be inappropriate, or you can take a step back and simply say, we're going to say that there's something about challenging his credibility that is not appropriate, and the question is, how many of those things are appropriate? You get into a sliding scale. You could say, for example, we'll allow four things that are challenges to the credibility, and that's okay from a due process standpoint, but we won't allow eight. Now, our position would be that that gets into an arbitrary weighing when you're dealing with someone who is incompetent, and you're not giving that person any extraordinary protections because of the incompetency. So it's better to have... Well, what you're arguing for is simply entirely ignoring his testimony. No, I'm not suggesting that, Your Honor. I am suggesting that you shouldn't be making negative determinations about his testimony. If you're going to give him any additional protections and he's incompetent, then you have to say that... You have to believe what he says. Or not believe it, but don't attack his credibility. You can say, I'm not going to believe it because of some other reason, but if you say, I'm not going to believe it because I don't believe he's credible, and you're saying that during his period of incompetency, you have in essence denied him due process. Well, I'm looking at the board opinion and I'm trying to find where they rested in large part entirely or in some part on the credibility as opposed to all of these medical records. So you're saying the medical records come out because if they were based on an examination and he was incompetent during the examination, I guess I'm not following. I mean, you keep on saying you can't rely on anything to do with his credibility, but what about the rest of the stuff? The rest of the stuff certainly stays in, Your Honor, but if you view the problem that we have taken issue with, we have asserted that all of their view of this medical evidence and testimony is infused with their view of his credibility. They're not inseparable. Well, I know you've taken that position, but can you point us to the record of findings and show us why that's so? Well, take Dr. Bernard's opinion, Your Honor. Dr. Bernard was the board certified internist who determined that Mr. Rice did not have an epigastric hernia in service, that he had an inguinal hernia. Now, Dr. Bernard also took x-rays and those x-rays very clearly showed that there was no epigastric hernia. Well, can you point us to the... I mean, we're not finding facts here and you're not testifying obviously, so can you point us to what you're talking about in terms of the board's reliance on that testimony? Just one second, Your Honor. When I set out on page 15 of the reply brief of the beginnings of the negative credibility determinations that the board made, and that also continues through page 16 and references especially Appendix 49, which was my brief before the Court of Appeals for Veterans Claims. And there are at least 18 circumstances listed beginning on page 15 of that reply brief where the board made negative credibility determinations that impacted how they viewed what had happened medically before. So, our position is that before you get into the medical determination, if you're dealing with Edwards, Edwards said, there's going to be certain circumstances where we're going to want to give extraordinary protections to the veteran. And if we're going to do that, we have to have some knowledge that he's incompetent and that the VA has to know that. At what point in time does he become competent again? He became competent again in 2010, Your Honor. Okay. So, the essence of your argument is that when he said, I don't remember while he was incompetent, it can't be weighed against him saying, I have a specific recollection now because now he's competent. Correct. That's the core of your argument, is it not? It is in essence that if they're taking information during the period of incompetency and they are using it to negatively determine whether he is credible, whether it's because of information after his competency has been ended, incompetency has been ended, or otherwise, if they're using the information from that period of incompetency and they're doing so in a negative way, they've denied him due process. But there's a lot of other evidence that they have in addition to that dichotomy. They have a lot of medical records as well. And that's what you're asking us to weigh against. Your Honor, they ignored favorable evidence and our contention is that in part they did that because they were so focused on his credibility issues that they weren't going to discuss these other issues. I'm in my rebuttal time. Why don't we hear from the government? Thank you, Your Honor. Please support. We ask that this court dismiss this appeal for lack of jurisdiction. Although Mr. Rice has raised what he characterizes as a due process claim and the government's view that due process claim is one in name only, that what Mr. Rice is seeking is this which is not within the province of this court's jurisdiction. Why isn't it kind of a legal question? I mean, forget the words due process, but a legal question, if indeed the question is whether or not during a period of incompetence you can then rely on or hold anything against the defendant that he said or didn't say during a period that it's undisputed he was incompetent. Why isn't that kind of a quasi-legal issue? Respectfully, Your Honor, we would say that it wouldn't be a legal issue. One, because there is no law on that issue. There is no law that Mr. Rice has cited to or that we can identify that would suggest that this court can ignore or reweigh testimony in the manner that Mr. Rice is suggesting. But even if that law did exist, how the Veterans Court and the board would have applied that law to Mr. Rice's case would be the application of law to fact, which would also fall outside of this court's jurisdiction. Well, would you agree that the board cannot fairly take an incompetent person's statement that I don't remember and weigh it against a later statement after he is confident, saying, well, I specifically remember this? Your Honor, we would suggest that the weighing of evidence, of credibility, of determining what evidence has more probative value than another is something uniquely within the province of the board and the Veterans Court. In the example that you've cited, which does harken back to the record in this case, what the board and the Veterans Court ultimately found was that the testimony that Mr. Rice had given in a period when he was competent, he gave that testimony in 2012 after being declared incompetent in 2010, that that testimony about facts and circumstances that had occurred more than 40 years earlier was less credible than the multiple contemporaneous specific clinical findings. I already said that to your opposing counsel, but you're not answering my question. My question is very simple. Would you agree that as a matter of law, the board cannot weigh a statement made by someone who is incompetent at all against a later statement made when that person is competent to contrast them and say, we disbelieve you because you have contrary statements? That's a question of evidence. It is a question of law about evidence. Respectfully, Your Honor, as we have seen the law, due process requires an opportunity to be heard in a meaningful time in a meaningful manner. We're not aware of any law that says that a board or the Veterans Court- I'm not talking about due process. I'm talking about evidentiary law. That is a course taught in law school, is it not? Yes. Do you agree or disagree with me on that point? You want me to say it again? No. Yes, Your Honor. I understand. I think it's a nuanced, factual question. I think that it is the board's statutory obligation to weigh all of the evidence in the record. And admittedly, Your Honor, a statement made while an individual is incompetent, as you have suggested, would not be given the kind of weight that a statement later given when competent would receive. And in this case, you are correct that the record does- the board and the Veterans Court did make note that earlier during Mr. Rice's incompetency, he stated he didn't remember when the inguinal hernia occurred. But that was one small comment in a much larger- I'm not saying- I already raised this to your opposing counsel. I'm not saying that there's not other evidence, which certainly is arguably sufficient. I'm asking simply that limited question. As a matter of law, may the board use as evidence statements made by someone who is incompetent to refute statements made when that person later is competent? Yes, Your Honor, I believe I can. What's your authority? I don't have any with me at present. It was not an issue that the parties briefed in there. I think it's the core of your opposing counsel's argument, even though I think it extraneous because of the weight of the other evidence. But I think it's the core of his argument. So I expect an answer. Your Honor, I can only suggest that the law that we have cited and discussed in our briefs pertains to what is ultimately the concern before just the court, is whether or not there was a due process violation, because that's what would bring this matter within the province of the court's jurisdiction. That would require... No, if there was a violation of law, it would also bring it within our jurisdiction. We may not determine questions of fact. Respectfully, what we have here is Mr. Rice's testimony in 2012, given when he was competent. He does recall... Which contradicts the records. Yes. And the court pointed out, the board pointed out, that's fine. I'm not arguing with you about that. Unless the court has any other questions. Thank you. Your Honor, in terms of what the government is arguing, they have asserted that there's no legal argument here. And I think as you have pointed out, Your Honor, that there is... We contend a constitutional argument. You're framing it as an evidentiary issue. But our position is that there has to be some... But in either case, I'm also saying it's irrelevant. Well, Your Honor, we would contest that it's not irrelevant. And we would say that it's relevant because the negative credibility determination so infused the board's decision and the court's decision... You said that before you sat down and now you're saying it again. And I keep looking at the board decision and you say that it infused it. But there's just paragraph after paragraph citing the medical record in this case. Now, your assumption is that it infused everything the board did, but I don't understand how, one, we can review that, or two, we can do anything about it when it's not here in black and white. And it's your view that it infused everything, but there's not an indication that it did. Your Honor, we believe that we did indicate that in our briefs. That we've indicated in case... Well, I know what you're saying, but I'm looking at the board's decision. So you're drawing a conclusion that when the board recites paragraph after paragraph concerning the medical records and the testimony of physicians, that the board's crediting that was infused by the credibility. And I don't know how we're supposed to get to that. Especially given that they separately discuss it. But they also don't discuss the positive evidence. So, for example, we know that there was a CAT scan of Mr. Rice's abdomen. And that CAT scan was of his abdomen, which should have shown that there was an epigastric hernia if there was one. But there wasn't any indication on the CAT scan of an epigastric hernia. There was an indication of an inguinal hernia. We would contend that that's substantive negative evidence. But the reality is that what the government has done is they've ignored the most important part of Mr. Rice's record before them. And that was his 26-year period of incompetency. And when it came down to it, when the government says... Why is that the most important part of the medical record? Because there has to be some recognition that a disadvantaged incompetent, as the court said in French, should be given some extraordinary additional protections, as this court said in Edwards. So where do you get those extraordinary additional protections? Well, let's unplug that 26-year period. Yes, sir. Evidence at one end, evidence at the other end. And they weigh it. And they say the weight of the evidence at the later end is outweighed by the evidence at the beginning, where you had medical records showing what was done. What's wrong with that? Well, there's two things. Number one, when you said unplug that incompetency period, the difficulty is that that should have a thumb on the scale, because... The thumb is you unplugged it. But if you're unplugging it, and you're saying that he had no incompetence at all, that would be one thing. But we can't ignore the fact that he had a 26-year period of incompetency. No, we're saying that none of the testimony that's offered from him during that period can be used against him. Your Honor, when he was first discharged, the discharge board said that he was discharged for three reasons. An epigastric hernia. And they mentioned that he had knee surgery, and that he was a bleeder related to the knee surgery. And the reality was, he never had knee surgery. So you have... Which means he was never a bleeder. And they then said throughout the record, well, because he couldn't be believed when he first made his claim for a hernia that he was told he had, and he had a ninth grade education, and didn't know any better. We're going to just take into account that he really didn't know what he said, and didn't know what he was complaining of. But the reality is, he had a hernia, which all of the medical records that are favorable to him show he never had it. He's never had an epigastric hernia. How far did he get through his training? He was about three or four months, Your Honor. And was he through basic and into advanced training? He was into advanced training, yes, sir. In conclusion, Your Honors, what we would like to suggest is that this is a case of first impression. That the issue of Mr. Rice's credibility during his acknowledged period of incompetency is something that relates to his due process rights. And we would request that you reverse the CABC, find that he had a service-connected inguinal hernia, not an epigastric hernia, and remand to the court so that proper percentages of disability can be determined. Thank you, Your Honors. We thank both sides in the case this evening.